Good morning, honors. My name is Christopher Cannon. I'm here to represent the petitioner in this matter, Ralph Tashjian. With me is Patrick Quinn, who is counsel for Mr. Tashjian in Tax Court. I'd like to save four minutes for rebuttal, if I could, because the facts of this matter are somewhat complex, but they're really not open to dispute, and the record is actually pretty small. The thing I'd like to start out by emphasizing is this is not a collateral attack on the Tax Court Lumenetics opinion. That's not what we're trying to do. This is a simple and straightforward attempt to apply the TEFRA rules to Mr. Tashjian, particularly the rule that he's entitled to notice of the tax court proceedings, the assessment proceedings, and he never got notice of anything in this case. Kagan. Could I just ask you maybe an overarching question as I tried to go through each of the notice and potential procedural pitfalls? In the end, he got to present his evidence and be heard by the tax court, correct, on these issues. Is there anything he didn't get to be heard on so that the tax court could rule and say, well, I disagree with you, I hear you, but you lose? Yes, Your Honor. The tax court said that what he was trying to do was attack the Lumenetics decision collaterally, so the tax court decision said, no, we're not going to listen to your arguments. He never got to address his arguments. The problem is that we're dealing with assessments from 82, 83, and 84 that he didn't get notice of until 96. So he never got to participate in the process of those assessments or how to or he never got to come up with an alternative theory as to how those assessments would affect other things on his returns. But what the Commissioner says is you should have gone back and moved to reopen Lumenetics and dealt with it there rather than dealing with it separately, and bases that upon apparently this non-collateral attack. I want to make sure that there's an agreement here among the parties that, in fact, you can't do collateral attacks. In other words, the Solitax case was a bankruptcy case, and maybe there is a tax case that says the same thing. But is there agreement among the parties that that would be a violation to collaterally attack Lumenetics? We're not trying to collaterally attack. I understand. I'm asking you. I'm asking you a question before that. Is it common ground? You're not trying to do it. I understand it. But is it common ground you can't? That's not an issue that I'm prepared to address because I don't think it's important I don't think this Court has to decide that issue. If I would just kind of blindly punt on that issue, I would say we probably I would say that under these circumstances, I would argue that a collateral attack could be permissible, but I would say that's not what we're trying to do here. Is there a tax case citing Solitax, moving it from the bankruptcy court jurisdiction over to the tax court? Not that I'm aware of. So what we're really doing is relying on whether it's a bankruptcy case. So I understand now your position on the basic law, so go ahead. But here's what the tax court says, so I'm trying to understand if the no harm, no foul question. They said even if he were entitled to contest the undertaking tax liability, which of course he can't, he is not shown and apparently is unable to show that Don't they, in effect, doesn't the tax court, in effect, address it on the merits even though it doesn't have to? No, I don't think it does, Your Honor, because the problem is if Mr. Tashton had been given notice back when the case was ongoing, there were many alternatives that he could have presented to settle his tax liability. This case came up when nobody could find the 1983 tax returns. Nobody knows what positions were taken. He certainly, if in fact, and I think it's pretty clear from the record that Mr. DeRico was a criminal and Mr. Tashton gave Mr. DeRico funds to invest in these partnerships, he would have been able to take a fraud loss. He would have been able to take bad investment losses. There would have been many other alternative theories that he would have been able to use to reduce his tax liability. What happened was because he was never given notice of these proceedings, all of a sudden, in 1996, he gets notice that he owes $700,000 based upon, you know, much less than $100,000 of actual deductions that were taken. So by not giving him notice, by not giving him the ability to participate, he wasn't able to participate in the determination of the deductibility of the three partnerships in issue for 82, 83, 84, or anything else on his tax return. And that's where the conflict comes in because Mr. DeRico kept extending the statute. And by extending the statute without telling anybody about it, you increase the interest, you increase the penalties, so you have this compounding effect. And that's why the conflict of interest is so important, and that's why the notice provisions of TEFRA are so important, and the record's clear he didn't get notice. The stipulation of facts in tax court Did he move to vacate that decision? He did not move to vacate. He did not move to vacate. The first time the issue of moving it to vacate came up, came up in the tax court decision. I'm sure the Court is familiar with that decision, and the Court specifically says, we're not advising this, we're not recommending this, we're not saying that that would be a good thing to do. So I think a fair reading of the tax court opinion is that moving to vacate the tax court opinion at this point in time would be a futile gesture. I think the best remedy is for this Court to say, yes, Mr. DeRico should have been given notice, he wasn't given notice. Accordingly, Lumenetics does not apply to him as a partnership item. It applies to him as a nonpartnership item, and that's the remedy under TEFRA. Because TEFRA says partners can participate, partners can opt out, and if they opt out, the particular deduction can become a nonpartnership item. So and the regulations under TEFRA indicate that if you're not given notice, if it turns out later, even if the matter is final, then you're entitled to nonpartnership treatment, and that's what Mr. Tash should get here, is nonpartnership treatment of those items. And I think it's interesting procedurally as to why I think this happened, because, as I'm sure the Court has seen hundreds of tax cases, and there's always a – and there's always kind of a transcript of events. And what happened here is that there was, you know, a variety of criminal investigations, and until about a year ago, it was the general rule that a criminal investigation would stop the civil investigation, stop the assessment process. So as a result of that, everything just was on hold for a long period of time, and nothing happened until 1996. So he never got notice of anything, and he's required to get notice under TEFRA, and obviously due process requires notice, and he just simply never received notice. If the Court has no other questions, I'd reserve the rest of my time, because I think it really goes to notice. And there's actually one other thing I'd like to touch upon, and it's interesting when the Court looks at the tax court opinion. It's clear that DiRico shouldn't have been acting as the taxman's partner, because if you look at the certificate of partnership, he's not even a partner. It's a very bizarre proceeding. If you can compare the certificate of partnership, the excerpt of record A, and the certificate of partnership, an excerpt of record B, the one for excerpt of record A is for Lumenetics, which is the tax court case. It lists Robert Steingen as the general partner. It doesn't even list DiRico. If you look at the one in excerpt of record B, it lists DiRico as the general partner. So you have someone who's acting as the taxman's partner. He's not a partner. He's not a lawyer. He's a promoter. And he should have been disqualified as the taxman's partner. They have several partnerships involved here. Wasn't he a partner in one or two? Yes. He was a partner in Synergistics. But what happened was, because there were three partners, Synergistics, DataFlex, and Lumenetics, Mr. DiRico was not a party for Lumenetics. He acted as taxman's partner for all three, and there was a stipulation that the litigation in Lumenetics would bind the other two partnerships. But at the time that stipulation was entered, Mr. DiRico was not a partner and had been debarred from practicing law and was really appearing in pro se  I'd like to keep the rest of my time for rebuttal, if you may. You may. Thank you. Good morning. May it please the Court, Marion Erickson for the Commissioner in this case. First of all, I would just like to disagree with my opposing counsel. The record is not all that clear about what notice the taxpayer in this case did or did not receive. He hasn't proven that he didn't receive notices. He testified that he didn't receive, that he had no clue that anything was going on with these partnerships until he received a notice of intent to levy. But he also testified that he didn't know whether he received K-1s, and then he was reminded that, yes, you did receive K-1s, and he said, oh, that's right. And then he wasn't sure whether he had gotten notice of deficiency or what that was even. I think that he was an unreliable witness in this regard. Perhaps he was. What did the tax court determine on that point? The tax court did not directly address the issue of whether or not he had received notice of these. Which is a little problematic, it seems to me. I feel like I'm swimming around here. Well. Because that's his point. We don't have a factual finding. The tax court did find that he received certain notices, but didn't address his argument that he didn't receive other notices he should have. The tax court acknowledged that Mr. Dorico had not necessarily done everything he was supposed to do as the tax matters partner, but that is between the taxpayer and Mr. Dorico. It's not the responsibility of the tax court or the IRS to send notices that Mr. Dorico was supposed to send. Well, what if the argument that he's not, well, was disbarred at that point and wasn't a partner, and therefore the record is not clear that he wasn't a partner in that partnership either. Did the tax court make any finding on that point? No. I mean, you know, it's seems that the tax court decision doesn't match these arguments. Well, I think that's my question to you is, what are we looking to uphold in the tax court opinion that matches the arguments on appeal? Well, the taxpayer has changed his argument somewhat on appeal, Your Honor, or shifted the emphasis on appeal to things that weren't emphasized to the tax court. But were raised in the tax court. Yes. I believe that he did testify that he didn't receive these notices in the tax court, so clearly it was raised. The tax court didn't consider that to be determinative of the issues, though, because the tax court construed what the taxpayer is doing is trying to mount a collateral attack on Lumenetics. And also the tax court knew a couple of things. One is that another limited partner in the partnership had already raised all these arguments about DiRico and had been denied because this Tasha Corporation was another limited partner in Lumenetics, and shortly after the actually almost a year after the tax court decision, they moved under the tax court's discretionary rules to intervene as a partner, and the tax court allowed that. They filed a motion to vacate the tax court decision on the very grounds that the taxpayer here is now asserting, that DiRico should not have been, was not qualified to be the tax matters partner because of his tax fraud conviction and all those same reasons. So I think the tax court was saying, look, first of all, you can't attack Lumenetics collaterally now. You should have brought a motion to vacate. But in any case, it doesn't matter because there's no merit there. You know, the second level setback, even if you could attack it, it's already been tried, and on these same exact grounds, we found no merit. And then the third level back to you, Justice Sotomayor. How do you respond to the argument that timing is important in terms of notice? In other words, the endgame might be that you would lose, but having notice, you have kind of an arsenal of options. Right. Well, I think you don't have any leverage or maneuverability. I think you have to look at the procedural posture of this case, which is it's a CDP hearing, okay? It's a CDP hearing that Mr. Tastian brought or requested after he received notice of intent to levy. And the way that works is that an appeals officer who has no prior association with the case is then assigned to take a fresh look at everything and make sure that everything is in order. And the appeals officer in this case did that. He had access to the administrative files. He had access to internal IRS records, a lot of which are not in the record before this Court, not in the record before the tax court. And that appeals officer certified in his notice of determination that all required notices had been issued. And so I think the tax court was relying on that in finding that the notice was not an issue, because the appeals officer, and you can – it's in the excerpt of record that was filed. Kagan, could you just show me where in the tax court opinion we say that we – the judge, where she says this isn't – this notice isn't an issue. It's sort of overtaken by events or evidence. I don't think the tax court explicitly says that. I think the tax court – she – Judge Cohen said at the end of her opinion, at the And I can only assume that she was throwing that into that catch-all decision. But what I – I also know that she relied upon the notice of determination, because in a collection due process hearing, what the tax court is doing is taking a look at whether or not the appeals officer abused his or her discretion. And in the notice of determination, which is in the appellant's excerpt of record at tab D, you can see on page – well, they're not numbered, but it's page 3 – that the appeals officer certified that notices of assessment or proposed efficiency assessments were sent to the address of record as required by statute. And it's our position that that's sufficient, that if we have established that level of compliance, the taxpayer has to come up with something more specific to overcome. And he has to overcome that in order to – to meet his burden of proving that he did not receive these notices. And the taxpayer has not done that here. The taxpayer was clearly not paying attention to this partnership once he was told, look, you can give me some money, invest in this partnership, it'll shelter all your income. He testified, first of all, that he had no idea that this was illegal. He testified also he had no idea who the tax matters partner was in any of these partnerships, because he wasn't focused on it. He wasn't paying attention. He wasn't – he wasn't upholding his duty as a taxpayer to be mindful of his obligations as a member of this partnership and to be paying attention to what was happening. Ginsburg. I feel better if it said that here than I would. You know what I'm saying? I'm just – I feel like there's some – there's something missing in the government's argument, the petitioner's argument, and then the tax court opinion. And the argument you just made makes sense to me, but I don't know where to find it. Mr. Erickson, I gather that the position of the Commissioner is the burden of proving that notice properly mailed was not received was upon the person asserting failure to receive the notice. Except, Your Honor, actually the burden is approving that notice was not issued. If we issued the notice, the IRS sent the notice to the right address, that's all we're required to do. He has to prove that it wasn't issued, not that he didn't receive it. Yes. Okay. And that it wasn't issued. And that's in – on this record, he failed to prove that it wasn't issued. Absolutely. That is our argument on this point, Your Honor. Could I – could I intercede to ask a question I have? Sure. The tax court – counsel argues that the tax court just played lip service to the idea of going back and clad all the tacking because it pointed out problems. I've read that. I'm not sure that is my interpretation of what was said. But I would like to have you focus on that, which begins at page 12 of the tax court's opinion, in which the tax court apparently says that there should have been a – there should have been return to luminatics. And then at the bottom of the page, it says that the Petitioner concedes the proper course for him would have been to file a motion to vacate that decision. Was that concession made on the record in that case? Well, Your Honor, I believe so, but I can't recall exactly whether it was something that was said at the trial or whether it was in a plea deal. Were you a trial lawyer? No, I wasn't the trial attorney. Sorry. I just handled the case on appeal. All right. Well, but at any rate, according to the tax court, there is a concession. Ordinarily, when there's a concession, we don't hear it on appeal. The parties have come to a joint agreement. Then, in order to cite and give authority, the tax court cites Celotex with a CF, which I assume is because it's a bankruptcy case, and then cites some tax court cases, which I have not read. Do those tax court cases hold that collateral attacks cannot be made on the prior decisions? Your Honor, I have to confess that I haven't – I did not renew my – I did not read those cases again in preparing for the argument, so I can't answer that question definitively, I'm sorry. I don't know for sure, but I would assume – implication, obviously, is that they do support the application of that principle in tax cases, but I just don't know. Well, at least Rule 162, we know, occurs and is there and well and healthy. It also indicates that the tax court seems to be saying that these issues should have been taken to the Lumenetics case, and if you're – if the tax court is right about the only thing that's left were the papers that were taken by the government, but everything else seems to be housed within Lumenetics, is it your position that they can go back now to Lumenetics and petition to set aside the verdict or the decision on these issues? Absolutely. I believe that they have the right to do that. It's discretionary with the tax court whether to permit a motion to vacate after 90 – I believe it's 90 days after the decision. In the sound discretion of the court? Yes, within the discretion of the tax court. They did so permit the Tasha Corporation to do so well after the deadline. See, the only question is whether or not they have to, that is, whether, in fact, the tax court has authority to say you can't collaterally tax, but you have to go forward going to Lumenetics, and they've cited some tax court cases, assuming the tax court judge cited the cases correctly. Do you know of any other cases that indicate, like in the bankruptcy area, that you can't collaterally attack? I can't cite anything off the top of my head, Your Honor. My recollection is that it's generally a principle of law that's pretty well established that you can't collaterally attack one case in an unrelated case. I understand your position, but this case seems to be in, at least I think it seems to be, being decided based upon that particular rule. But I didn't see any help that I got from the briefs or in the tax court case to let me know that that is really the law. Well, there may not be anything out there directly on point, Your Honor. Okay. Thank you. I would have cited it in my brief. Let's see. You did mention about the missing records that Taxpayer claims that he was deprived of some records of his in order to – that he would have used in order to show that I gather what he was arguing was that he would be able to use those records to show that the Lumenetics partnership was entitled to this deduction that was disallowed by the tax court, and yet he did testify that those were personal records and not that argument had no merit. No matter what he calls it, it's the government's position that what he's essentially trying to do is collaterally attack Lumenetics' decision, and it's our position that he had lots of opportunities to be involved in the partnership level proceedings earlier on. He disregarded those notices. He paid no attention. He did not take advantage of those opportunities. I mean, for example, he – I just want to point out that he – the assessment for 1983 was made in 1993, which was shortly, about a month after, Tasha Corporation intervened in this – in the Lumenetics decision. He surely would have received a notice of the assessment. I mean, the IRS doesn't assess people without sending notice. That's – of course, obviously, you know, things go wrong. But there are quite a few notices that, in the regular course of events, he would have received in advance of – way before 1996. And it's our position that he – those notices were properly issued and more likely than not received, and that he just simply chose not to do anything about it, and that he is now, when the IRS is threatening to levy, he suddenly became interested in this case and is attempting to attack Lumenetics' decision. He doesn't want to move to vacate because that's already been tried and was not successful, so he's going an end-runaround by a different route. We respectfully request that you affirm the text. I'll ask you one other question. Yes. The Lumenetics case was a tax court case. Yes, it was. And this is a tax court case. Yes. When the tax court says under Rule 162 you can't collaterally attack, you're in the tax court, but I take it 162 says you've got to go back to the trial judge that had the tax case? I didn't read 162, so I don't know what it says. I thought 162 – well, I can't recall off the top of my head. I thought that was the rule about filing a motion to vacate. And I believe that that merely dictates the time limits and the discretionary ability of the tax court to grant a motion to vacate after the time limits have expired. I don't believe it addresses your question. Okay. Thank you. One point, and I don't want to annoy you past your time. The difference here is – the alleged difference is that we were talking about roughly $70,000, and now, because of the time, the passage of time, the interest and whatever, we're talking about $700,000. Actually, it's substantially less than that, Your Honor. The taxpayer may be exaggerating slightly. There were some other taxes involved, some responsible officer penalties under 6672 that were also in that same notice of deficiency, and those account for about $250,000 of that amount. So the total amount that's related to these taxes, I believe, is more like $520,000, something like that. And actually, the 1983 year is no longer an issue, so that's been zeroed out. So, anyway, it's less than that. But, yes, it's ballooned quite a bit because of the taxes, I mean, because of the interest and the penalties. Does that address your question? Yes, again, it's more the reason we're here rather than some other reason, probably. I don't know. Yes, sir. I have to point out, of course, the taxpayer could at any time have chosen to pay those amounts to stop the interest and penalties from accruing, and we could still be litigating after the fact. Thank you. Thank you, Your Honor. If I can address the questions and respond. Notice, if the Court will look at what is the collection due processing here at tab D, it's really just a boilerplate form that it says the service, you know, certifies that our records say we sent everything out. Well, in the tax court opinion, one of the things the tax court opinion, one of the cases the tax court talks about, Wichita Terminal Electric, and in that case it says that the failure of a party to produce evidence within its control, which is favorable or would support it, gives rise to the presumption that there is no such evidence. And one of the things that was introduced in the tax court attached to the stipulation of facts, which is part of the excerpt of record here, were the transcripts. And those transcripts of accounts do not show any notices to Mr. Ralph Tastian until 1996. That's the first notice that showed on those transcripts. Notices were sent to Mr. DeRico as the tax matters partner, but nothing was sent to Mr. – but there's no evidence that anything was sent to Mr. Tastian. The government talks about how the Tasha Corporation intervened in the tax court and moved to set things aside. And Tasha was able to do that because somehow Tasha Corporation, which is no relation to Mr. Tastian, there's – it's just kind of a coincidence of name. The Tasha Corporation was a 23 percent partner in the partnerships. They had somehow been getting the notices. So they – so they intervened in 93. Mr. Tastian never got notice of that. He simply didn't know of the Lumenetics proceeding. One thing he did know, though, was that he had not paid any taxes. No, I don't think – no, he didn't know that because his 82, 83, 84 taxes had been filed. He didn't get – his 85 taxes were filed, 86, 87. There's nothing that indicates that he got any audit notices as to any of those years. The first he heard was in 1996. And that's why the notice issue is so important, because unlike Tashian, which got notice, which was able to participate, which was able to decide to pay the – to pay the taxes, to stop the running of interest and penalties, he never got that notice, so he wasn't able to do any of those things. Dorico, as the deficient TMP, may have gotten notices and did participate, but Tashian never had the opportunity to do those things. So if he's not a deficient TMP, then the notice issue is irrelevant? No. No. It just – it makes it worse. I think as a – as a deficient TMP, the TEPRA process shouldn't have gone forward. He should have been disqualified from being as a TMP. But independent – but even if he's – even assuming he was a good TMP, Mr. Tashian still has the notice issue. And that's a different issue than Tasha Corporation had, because Tasha Corporation was alleging that Mr. Dorico was a bad TMP, but they were also alleging a lot of other issues that I'm not privy to, because that's a completely different case. But the failure to notify was not something that they were – that Tasha Corporation was claiming. So what is your response, then, if they meet – the government says they've met their I think their boilerplate statement on a form, which is completely contained in Exhibit D, I don't think is sufficient to shift the burden, particularly when you have specific testimony by Mr. Tashian that he did not get any notices, when you have a stipulation attached to the transcripts of the proceedings against Mr. Tashian that says the first notice that he got was in 1996, when the stipulation refers to the contents of those transcripts, it talks about how there's a code put in there for a criminal investigation, there were codes for other years. There are – there's nothing – there's never been a document identified or produced by the service to contradict Mr. Tashian's uncontradicted testimony that he didn't receive the notice. And I would think the IRS, if they're proceeding in tax court, and if notice is an issue, and it clearly was, would have some record of sending out the notices, and they didn't have any record of sending out those notices. You see, notice wasn't the issue. The issue wasn't notice. The issue was that they – that they mailed the notice. And they mailed it to, let's assume it was Dorica, and Dorica is a terrible person that you would describe, you're – you're not going to say that the – that the tax – that the commissioner had to know that, at least on this record. I would say on this record, yes, because one notice to – I would argue that notice to Dorica shouldn't be deficient, but there's not even any evidence that they mailed out the notice. I'm – there's simply – the record is silence on that. The only real testimony is – is Tashian saying he didn't get notice. And you look at the stipulation in tax court, it says they made – the first agreement based on the transcripts was a notice was mailed in 96. It doesn't say that Tashian received that notice, because Tashian admits getting some notice sometime in 96. He's not sure if it's the first mailing in 96 or a second mailing in 96. But as soon as he got notice, he started to participate. He started to participate in the collections due process proceeding. So I think it really goes to show that if he would have gotten a notice earlier, he would have done something. But he never got any notice until 96, and that's why we're here today. Thank you. Thank you. The case just argued, Tashian v. the Commissioner, is submitted and we're adjourned for the morning. Thank you to both counsels. All rise.
judges: Wallace, Farris, McKeown